IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TRSUTEES OF THE HEATING, PIPING AND REFRIGERATION PENSION FUND, et al.** | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | CIVIL No. JKB-13-0598 |
| **MILESTONE CONSTRUCTION SERVICES, INC., et al.** | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

The trustees of the Heating, Piping and Refrigeration Pension Fund, the trustees of the Heating, Piping and Refrigeration Medical Fund, the trustees of the Heating, Piping and Refrigeration Training Fund, the trustees of the Heating, Piping and Refrigeration Industry Promotion Fund, the trustees of the Heating, Piping and Refrigeration Communications and Productivity Fund, the Steamfitters Local 602 Retirement Savings Fund, and Steamfitters Local Union No. 602 (the "Union") (collectively "Plaintiffs")[1] brought this suit against Milestone Construction Services, Inc. ("Milestone") and Fidelity and Deposit Company of Maryland ("F&D") (collectively "Defendants") to recover amounts owed for labor performed at a construction site from a Miller Act payment bond, pursuant to 40 U.S.C. § 3133. Now pending before the Court are (1) Plaintiffs' motion for summary judgment (ECF No. 16), (2) F&D's

---

[1] The Pension Fund, Medical Fund, Training Fund, Industry Promotion Fund, and International Training Fund, as well as the Steamfitters Local 602 Retirement Savings Fund, are all multiemployer employee benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). 19 U.S.C. §§1002(3), (37); (ECF No. 1.) The respective trustees of these funds are the designated fiduciaries as defined by ERISA. 29 U.S.C. §1002(21); (*Id.*) The Communications and Productivity Fund is a labor-management cooperation committee as defined in the Taft-Hartley Act, 29 U.S.C. § 186(c)(9), and the Labor-Management Cooperation Act of 1978, 29 U.S.C. § 175a. (*Id.*) The Union is an unincorporated labor organization as defined by the Labor-Management Relations Act ("LMRA"). 29 U.S.C. § 152(5); (*Id.*)

cross-motion for summary judgment (ECF No. 19), and (3) Milestone's cross-motion for summary judgment (ECF No. 20). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below Plaintiffs' motion for summary judgment is DENIED, F&D's cross-motion for summary judgment is GRANTED, and Milestone's cross-motion for summary judgment is GRANTED.

I. BACKGROUND

This action stems from three contracts that Milestone entered into with the United States Government to perform construction work on three buildings of the National Institute of Standards and Technology ("NIST")—NIST Buildings 202, 301, and 318. (ECF No. 16-1 at 4.) As required by the Miller Act, Milestone obtained a payment bond for each of these three projects from F&D. 40 U.S.C. § 3131; (ECF No. 19-1 at 4.) On each of these three projects, Milestone subcontracted with T.K. Mechanical, Inc. ("T.K.") to perform pipefitting and related construction work. (ECF No. 19-1 at 4.) In turn, T.K. turned to the Union to obtain skilled labor pursuant to a Collective Bargaining Agreement ("CBA"). (ECF No. 16-1 at 5.)

Under the terms of the CBA, T.K. was required to make payments, referred to as "contributions," to Plaintiffs for each hour worked by a pipefitter. (ECF 19-1 at 4-5.) For example, T.K. was required to pay the Pension Fund $1.16 for each hour worked by a first-through fourth-year apprentice pipefitter and $7.74 per hour worked by a fifth-year apprentice or journeyman pipefitter. (*Id.*) In order to calculate the total amount owed by T.K., Plaintiffs relied on Contribution Reports, in which T.K. self-reported the number of hours worked by each individual pipefitter. (ECF Nos. 16-1 at 5-6; 19-1 at 5.) These reports were not itemized by job or project, however. (ECF No. 17 at 71 ¶ 4.) From January 2012 through March 2012, T.K. provided these reports but failed to make the required contributions. (*Id.*)

T.K. also submitted weekly Certified Payroll Reports to Milestone as required. (ECF No. 19-1 at 5.) Milestone then forwarded these reports to the government. (*Id.*) For each project, these reports listed each employee, their applicable wage rate, and the number of hours they worked on the given project. (*Id.*) However, these reports did not list an employee's union affiliation. (*Id.*) Further, the last Certified Payroll Report provided to Milestone by T.K. was for the week ending on March 17, 2012. (*Id*; *See,* e.g., ECF No. 17 at 265.)[2]

Milestone also received "daily work reports" from T.K. (ECF No. 17 at 462, 585-587.) However, like the Certified Payroll Reports, the "daily work reports" did not list an employee's union affiliation. (ECF No. 17 at 585-587; ECF No. 20-1 at 7.)

On March 23, 2012, T.K abandoned the three NIST projects at issue in this case and instructed its workforce, including Local 602 members, that it would no longer be operating. (ECF No. 16-1 at 10.) On April 3, 2012, T.K. filed for bankruptcy. (*Id.*)

On June 14, 2012, Plaintiffs sent letters via certified mail to Milestone and F&D as notice of a claim on the payment bond for each project. (ECF No. 17 at 95, 107, 119.) Defendants received these letters on June 19, 2012. (ECF No. 19-1 at 8.) These letters provided, in relevant part (and with reference to the appropriate project):

> Please accept this letter as notice of a claim on the above-referenced bond on behalf of the Union and the Local 602 Funds as T.K. Mechanical, Inc. has failed to adhere to its contractual obligation and has not paid its employees in full for the labor supplied for work on the NIST Building 318, Gaithersburg, Maryland project.
> T.K. Mechanical, Inc. is a signatory to a collective bargaining agreement ("CBA") with the Union under which it is obligated to make contributions to the above Funds and to the Union for dues checkoff, and other assessments. A copy of the applicable CBA with the most current wage and fringe benefit wage sheet is attached hereto as Exhibit A. . . . T.K. Mechanical, Inc. has failed to make the

---

[2] The parties disagree about whether Plaintiffs' claims are for work performed through March 16, 2012 (ECF No. 19-1 at 9) or through March 23, 2012 (ECF No. 22 at 8-9). However, the Court does not need to—and therefore will not—reach this issue to resolve the case before it.

3

required contributions to the above Union and Funds for dues checkoff, and other assessments.

    T.K. Mechanical, Inc. is required to pay to the Union and Local 602 Funds the applicable rates specified in Exhibit A for each hour worked by its employees on the NIST Building 318, Gaithersburg, Maryland project. T.K. Mechanical, Inc. also owes contractual assessments and interest for not filing the required reports and making payments in full on time as required under the CBA. T.K. Mechanical, Inc. has not made those required payments.

    This letter serves as written notice of a claim on the bond furnished for the NIST Building 318 project under the Miller Act, 40 U.S.C. § 270b and 40 U.S.C. § 3131, or any other applicable law and notice of a claim on any and all other applicable bonds furnished on this job for the benefit of Local 602 workers performing on this project.

    Please advise what, if any, additional information is needed for you to make full payment of all amounts due on the bond once we have ascertained the total number of hours worked by T.K. Mechanical, Inc. employees on the NIST Building 318, Gaithersburg, Maryland project.

(ECF No. 17 at 95-96.)

On July 2 (ECF No. 17 at 131-135 and 137-141) and July 7 (ECF No. 17 at 143-147), F&D mailed Plaintiffs letters acknowledging receipt of the June 14 letters. (ECF No 19-1 at 10.) These letters stated, in relevant part (and with reference to the appropriate project and bond):

    The Surety is initiating an investigation into your claim.

    The Surety's investigation requires information and documentation sufficient to evaluate and demonstrate your claim. In order for the Surety to timely respond to your claim, please send supporting information and documentation to the Surety within 10 days of the date of this letter, including but not limited to the following.

    [A fifteen item list follows] . . . .

    The Surety requires such information and documentation to determine with substantial accuracy the value of your claim and the compliance of your claim with the terms of the bond, subcontract or other requirements. Your failure to timely provide the requested information and documentation will impact the Surety's ability to investigate and evaluate your claim and therefore may result in the dispute and/or denial of your claim.

    . . . .

    Without passing on the merits of your claim, we are taking this matter up with our bond Principal. Our actions are taken for the purposes of the investigation only and the Surety reserves all rights and defenses that the Surety and/or its Principal may have or obtain concerning this matter. . . .

(ECF No. 17 at 142-144.)

In response to this letter, Plaintiffs requested more time in emails dated July 9, 2012 and August 2, 2012. (ECF No. 17 at 201, 203, 205, 207, 210, 213.) At some point prior to July 9, Plaintiffs received a copy of the certified payroll records from Milestone. (ECF No. 17 at 201, 203, 205; *see also* ECF No. 17 at 192 ¶ 9.) On October 17, 2012, Plaintiffs sent F&D three letters identifying the amount owed for each project. (ECF No. 17 at 215-428 (Overkott Spell Decl. Exs. 8-10).) For example, the letter regarding NIST Building 318 read, in relevant part:

> T.K. Mechanical, Inc. failed to remit contributions, dues checkoff and other assessments to the Local 602 Funds and Union for work performed on the above-referenced project in the amount of $1,137.00 for the period of January 2012 through March 2012.
> I have enclosed a Proof of Claim and supporting documentation for the total amount owed of $1,137.00 on this bond.

(ECF No. 17 at 216.)

On January 18, 2013, Plaintiffs received a copy of a letter from Milestone's counsel to the senior claims counsel at F&D. (ECF No. 16-1 at 12.) In this letter, Milestone's counsel explained that "Milestone disputes the claims." (ECF No. 17 at 148.) In particular, the letter alleged that "[b]ased on the documentation provided to date by the claimants, the claimants have failed to comply with the notice requirements for making a claim against the payment bond." (*Id.*)

On February 25, 2013, Plaintiffs filed the action presently before the Court. (ECF No. 1.) Plaintiffs filed a motion for summary judgment on September 13, 2013. (ECF No. 16.) On October 15, 2013 Defendants F&D and Milestone filed separate cross motions for summary judgment. (ECF Nos. 19, 20.)

## II.     LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a

party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III. ANALYSIS

Both parties have raised a number of issues in their respective motions and cross-motions for summary judgment. However, the Court will focus its analysis on Defendants' argument that Plaintiffs failed to comply with the notice requirements set forth in the Miller Act as this issue is dispositive of the entire matter. 40 U.S.C. § 3133(b). Specifically, Defendants argue that Plaintiffs' June 14 notice letters failed to "state with substantial accuracy the amount claimed." 40 U.S.C. § 3133(b)(2); (ECF Nos. 19-1 at 17-22 and 20-1 at 11-16.) The Miller Act provides, in relevant part, that:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. *The action must state with substantial accuracy the amount claimed* and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133(b)(2) (emphasis added).

It is well established that the Miller Act "requires timely notice as a condition precedent of the right to maintain suit on a payment bond." *Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1342 (4th Cir. 1992). Further, as the Fourth Circuit explained in *CTI/DC*

6

*Incorporated v. Selective Insurance Company of America*, 392 F.3d 114, 119 (4th Cir. 2004), "[w]hile the [Miller Act] as a whole is designed to afford additional protection to subcontractors, the notice requirements aim to protect the general contractor." "As such," the court continued, "although courts liberally interpret the Federal Miller Act's requirements concerning the method by which such notice is given, the rules regarding the contents of such notice are more rigidly applied." *Id.* at 119-120 (citing *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir. 1996).

Traditionally, courts have held that in order to satisfy the notice requirement of the Miller Act any notice must satisfy three requirements: "(1) notice must be given within 90 days of the subcontractor's last work; (2) the notice must 'stat[e] with substantial accuracy the amount claimed'; and (3) the notice must include 'the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.'" *U.S. ex rel. S&G Excavating, Inc. v. Seaboard Sur. Co.,* 236 F.3d 883, 884 (7th Cir. 2001) (citing 40 U.S.C. § 270b(a), now codified as 40 U.S.C. § 3133(b)). However, Plaintiffs have argued that while the Miller Act requires the *action* to "state with substantial accuracy the amount claimed" it does not require the *notice* to do so. In support of the latter proposition, Plaintiffs cite to the language of the statute and contrast it with the language of a prior version of the Miller Act. (ECF Nos. 16-1 at 19 and 22 at 15.) This previous version, 40 U.S.C. § 270b(a), which is the version quoted in *S & G Excavating*, was in effect until August 21, 2002. It read:

> [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last labor or furnished or supplied the last of the material for which such claim is made, *stating with substantial accuracy the amount claimed* and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

7

40 U.S.C. § 270b(a) (emphasis added). As Plaintiffs explain, "until 2002, the language of the Act linked the 'substantially accurate' requirement to the initial written notice . . . . [H]owever, the statute no longer includes a 'substantial accuracy' requirement linked to the written notice." (ECF No. 22 at 21.)

The Court recognizes that in its effort to modernize and simplify the language of the Miller Act, Congress has made the notice requirements less clear. One reading of the new text is the one put forth by Plaintiffs, namely that the "substantial accuracy" requirement applies to the action but not to the original notice. However, under such a reading, the statute no longer provides any guidance as to what the content of the "written notice" should be. Another reading of the new text is that the "substantial accuracy requirement" applies to *both* the notice and the action.

In resolving this ambiguity, the Court notes that the changes to the language of the Miller Act's notice requirement were made as part of the Revision of Title 40, United States Code, "Public Building, Property, and Works", Pub. L. No. 107-217, 116 Stat. 1062 (2002). The preamble of the statute provides that it is "[a]n Act to revise, codify, and enact *without substantive change* certain general and permanent laws, related to public buildings, property, and works, as title 40, Unites States Code, 'Public Buildings, Property, and Works.'" *Id.* (emphasis added).

Further, it is a venerable principle of statutory interpretation that "while changes in statutory language often indicate legislative intent to change a statute's meaning, such an inference is inapplicable to codifications and recodifications of laws." *Koch Foods, Inc. v. Secretary, U.S. Dept. of Labor*, 712 F.3d 476, 486 (11th Cir. 2013) (citing *Finley v. United States*, 490 U.S. 545, 554 (1989); *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 199 (1912)).

8

Here, not only is the statute at issue a recodification statute, it also explicitly provides that it made no "substantive change[s]" to the law.

The notice requirement also serves an important purpose: it allows "general contractors to make final payments to subcontractors after waiting a reasonable amount of time to determine whether there are outstanding claims by second-tier subcontractors." *United States* ex rel. *Alban Tractor Co., Inc. v. Hudson Ins. Co.*, No. CCB-12-1538, 2013 WL 509151 at *2 (D. Md., Feb. 11, 2013) (discussing the "purpose of the ninety-day notice requirement") (citing *Honeywell, Inc.*, 6677 F.2d at 386). Indeed, while sub-contractors (who are exempt from the notice requirement) submit their invoices directly to the general contractor, second-tier subcontractors submit their invoices to the subcontractor and therefore the general contractor has no notice of the outstanding invoices unless it is provided by the second-tier subcontractor. *Id.* In order for such notice to be meaningful, however, it must provide the general contractor with some idea of the magnitude of the claim—hence the "substantial accuracy" requirement. As a result, the Court reads § 3133(b)(2) of the Miller Act as requiring that both the action *and the notice* "state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2).[3]

---

[3] Plaintiffs note that:
> [T]here is no evidence that the Defendants were ever at risk of making double payments of any kind for the work performed by the plumbers in this case due to an insufficient Miller Act notice from the Plaintiffs. This is because Milestone Construction's last payment to T.K. Mechanical was several months before the work stopped, and even before the Plaintiffs' notice letters were required. This case does not present a situation where, but for an earlier notice, the Defendants could have avoided paying out money to its subcontractor in favor of payments directly to the unpaid laborers and materialmen.

(ECF No. 22 at 10-11.) Although Plaintiffs' argument that Milestone was not at risk of making a double payment has facial merit, ultimately, the Court finds it unconvincing.

First, while the purpose of the substantial notice requirement is to avoid double payment, its application is not limited to those cases where it successfully achieves that purpose. While Congress' decision to include a substantial notice requirement in the Miller Act was motivated by a desire to avoid double payments, the statute it

Here, Defendants' notice failed to state any amount. Plaintiffs argue that their notice nonetheless satisfied the "substantial notice" requirement. (ECF No. 16-1 at 20.) The thrust of Plaintiffs argument is (1) that they supplied to Defendants "the most accurate information available to the Plaintiffs," and (2) that based on information Milestone had in its possession, Defendants could have arrived "at the total amount owed to the Benefit Funds once it received the Plaintiffs'' initial notice letter. (*Id.* at 20-21.)

While the Court is sympathetic to the difficulties Plaintiffs faced in assessing the total amount of their claim, the Miller Act requires Plaintiffs' initial notice to "state with substantial accuracy the amount claimed." 40 U.S.C. § 3133(b)(2). The initial notice here fell woefully short of this "substantial accuracy" requirement. Indeed, the notice failed the test set forth in *Honeywell* where the amount claimed in the initial notice was substantially—if not precisely—accurate. 677 F.2d at 386-387 ("Even if in the resolution of that dispute Honeywell was found to be due something less than its claim, the notice may still have been substantially accurate, for the statute does not require precision.")

Courts have, on occasion relaxed the "substantial accuracy" requirement. For example, Plaintiffs cite *Southern Electric Health Fund v. Kelley*, 308 F.Supp.2d 847 (M.D. Tenn. 2003). There, the court denied Defendants' motion for summary judgment even though plaintiffs failed to state the amount of their claim "because evidence in the record indicate[d] that [Defendants] may also [have] possessed independent knowledge of the amount owed to Plaintiffs" by the sub-contractor. *Id.* at 866 n.8. However, as Defendants have pointed out, in *Southern Electric*

---

enacted requires substantial notice from second-tier subcontractors irrespective of whether any such risk actually exists. 40 U.S.C. § 3133(b)(2).

    Second, allowing Plaintiffs to be exempt from the substantial notice requirement on the basis that no risk of double payment existed would inject significant uncertainty into a provision designed to provide general contractors with certainty and clarity. Indeed, it would defeat the purpose of allowing general contractors to proceed with confidence in making payments to sub-contractors.

*Health Fund,* under the terms of the subcontracting agreement, the general contractor was required "to pay and be responsible for all invoices, including payroll, incurred" by the subcontractor. *Id.* at 857. As a result, the court found that the relationship "was not a normal general contractor-subcontractor one, because [the general contractor] was much more involved in [the subcontractor's day-to-day operations and provided much more support (both in terms of finance and materials) than a general contractor normally would." *Id.* Here, however, no such special relationship existed between Defendants and T.K.

Similarly, in *United States for Use and Benefit of Kelly-Mohrhusen Co. v. Merle A. Patnode Co.*, 457 F.2d 116 (7th Cir. 1972), the court found that plaintiff's notice satisfied the requirements of the Miller Act even though it did not include the name of the subcontractor to whom goods and services were supplied. However, there, the Court relied on the fact that "the omitted information was, in fact, provided orally." *Id.* at 117. Here, unlike in *Kelly-Mohrhusen*, the June 14, 2012 Plaintiffs' notice letters were not meant to confirm or memorialize a prior conversation. Hence, the Court does not have any prior conversations to look to find that the notice met the "substantially accurate" requirement.

Plaintiffs also cite *U.S. for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Company*, 255 F.2d 137 (8th Cir. 1958). There, as in *Southern Electric Health Fund*, plaintiff's notice failed to state the amount of the claim. However, again the case is distinguishable from the one at bar. Indeed, the *Hopper Bros Quarries* court found that, based on defendants' response to plaintiff's letter of notice, "[p]laintiff had reason to believe that the contractor found the written notice sufficient and it would be unconscionable to permit the contractor or the bondsman to escape their just obligation to pay because of any deficiency . . . in form [that] was attributable to their own conduct." *Id.* at 145. Here, F&D's response to

11

Plaintiffs' letter of notice did not indicate that it found the written notice sufficient. Rather, it clearly provided that "[t]he Surety's investigation requires information and documentation sufficient to evaluate and demonstrate your claim." (*E.g.,* ECF No. 17 at 131.) F&D further requested that "supporting information and documentation [be sent] . . . within 10 days." (*Id.*) However, it took Plaintiffs over three months to provide the requested information. Therefore, unlike in *Hopper Bros. Quarries*, there is no basis here for a finding that Plaintiffs had reason to believe that Defendants found their written notice sufficient or that any deficiency in Plaintiffs' notice was attributable to Defendants' conduct.

As the Fourth Circuit held in *CTI/DC, Inc.*, "the need for exercising imagination was what the notice provision of the Miller Act was intended to prevent." 392 F.3d at 120 (quoting *United States ex rel. A. Edwards & Co. v. Thompson Const. Corp.*, 273 F.2d 873, 877 (2d Cir. 1959)). Here, Plaintiffs did next to nothing to prevent the need for exercising imagination. Plaintiffs merely informed Defendants that T.K. had failed to make contributions to the Funds and to the Union. (*E.g.* ECF No. 17 at 107.) Plaintiffs then attached a copy of the "wage and fringe benefit wage sheet" from the CBA and cursorily explained that the sheet specified the rates for each hour worked by members of the Union. (*Id.*) In their notice, Plaintiffs did not attempt to provide even a rough estimate of the amount of their claim. Nor did Plaintiffs provide Defendants with clear and detailed instructions on how they might use information from Certified Payroll reports to calculate—or even simply estimate—the amount of the claim.

Thus, even if the Court were to give the Miller Act a "liberal construction [in order] to enforce its purpose to have the obligations of a defaulting sub-contractor to suppliers of labor and material made good," the notice at issue here would fail even this lenient standard. *Hopper Bros. Quarries*, 255 F.2d at 146. Indeed, Plaintiffs' notice failed to give Defendants any

estimation of the magnitude of their claim or even any clear instructions on how Defendants might calculate it based on the information in their possession. Plaintiffs therefore failed to provide meaningful notice and prevent "the need for exercising imagination." *CTI/DC*, 392 F.3d at 120. Proper notice being "a condition precedent of the right to maintain suit on a payment bond," *Pepper Burns Insulation, Inc.,* 970 F.2d at 1342, the Court must deny Plaintiffs' motion for summary judgment, grant Defendants' cross-motions for summary judgment, and enter judgment for Defendants.

## IV. CONCLUSION

Accordingly, an order shall issue (1) DENYING Plaintiffs' motion for summary judgment, (2) GRANTING Defendants' cross-motion for summary judgment, and (3) entering judgment for Defendants.


Dated this <u>10th</u> day of January, 2014

                                        BY THE COURT:

                                        /s/
                                        James K. Bredar
                                        United States District Judge